FERNÁNDEZ *v.* HERNÁNDEZ.

APPEAL from the District Court of San Juan.

No. 71.—Decided March 30, 1905.

DIVORCE.—Because the dissolution of the bonds of matrimony is so far-reaching
in its effects upon society a divorce will not be granted to a plaintiff who
has not been blameless and conciliatory.

ID.—INSULTS.—Where insults are alleged as a ground for divorce they must not
be slight and the result of momentary excitement, but must be serious, per-
sistent, malicious and notorious, showing hatred and rancor.

The facts are set forth in the opinion.

*Messrs. Díaz and Texidor,* for appellant.

*Mr. Eduardo Acuña,* for respondent

*Mr. Rossy, Fiscal,* for The People.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

On August 11, 1904, Serapio Francisco Fernández filed a
complaint in the District Court of San Juan, setting up as
the principal cause therein that ever since June 12, 1898, when
he married María Dolores Demetria Hernández y Cepero, she
had insulted him continually in private and in public, and
that finally, on August 3, 1904, in the presence of a number
of persons, she had called him a person without shame, a
scoundrel, a bandit and a son of a whore, and that he had
given no provocation whatsoever for these insults which had
caused a scandalous disturbance of the neighbors and had
required the interference of a policeman.

From this marriage, which had been canonically con-
tracted, three children were born, named Rafael, Pura and
Celestino, who at the time of the filing of the complaint, were
three years and nine months, one year and ten months, and
eleven months of age, respectively.

As will be at once observed, the action for divorce is based
on grave insults by the wife, which are set forth in section 2
of article 105 of the former Civil Code, which is equivalent

to subdivision 4 of section 164 of the Revised Code, the former recognizing as a cause of divorce "personal violence actually inflicted or grave insults," and the latter likewise "cruel treatment or grave injuries." Consequently in this point there exists perfect harmony between both legal provisions.

The complaint filed in the action for divorce concludes with the prayer that the marriage bond be dissolved and sundered, and that it be held at the same time that the wife is the one responsible for the rupture, in order to secure as a consequence the custody, care and paternal authority in favor of the father of the three children had of the marriage to which we have referred above.

The defendant wife opposes the divorce by denying that she had insulted him at any time, and states that what occurred on August 3, 1904, consisted in her having returned to her husband a package of biscuits by throwing it on the counter in the store, which act being erroneously construed by her husband, caused him to fall upon her and beat her, which act caused her real indignation and wrung from her a protest expressed in a loud voice that he was "not acting properly," and that he had no right to maltreat her, but without making use of any of the terms charged. These facts so set forth in the answer to the complaint are the grounds for her prayer that the complaint be dismissed, thus leaving in force the marriage bond which unites her to her husband.

The evidence introduced for the purpose of establishing the grave insults, consisted of the testimony of witnesses, the first of whom was Isabel López Cepero, who deposed that she was the mother of the defendant wife, that the relations of the latter with her husband have not been cordial, that they have not lived peaceably, because the wife has always been jealous, that she does not know whether or not he has given any ground for the quarrels which have been going on for four years, although she states that he was harsh with her,

that on the part of the wife there were simple recriminations and insulting remarks, that her husband maltreated her and "would strike her with his hand and she would stand it," that she suffered because of the quarrels, that these were due to her jealousy, and that she knew nothing of what had occurred on August 3, 1904, because she was not there.

During her testimony a letter was introduced addressed by this lady to her daughter, dated in New York, August 18, without stating the year, in which maternal affection predominated and in which she gave good advice to her daughter whom she reproached for her jealousy, which she considered groundless, and which contributed to the annoyance of her husband who could not work, when both should be happy in the care of their children and live in a quiet home.

Asunción Burgos, María Morales, Julia Fernández, Ricardo Hernández, Juan Beltrán and Estanislao Rivera, other witnesses, all agreed that there had been quarrels between the couple and that the wife addressed to her husband the insulting words mentioned in the compaint and others as badly sounding, such as pimp and son of a whore, but they also agreed that such words at the time and on the occasion when they were uttered by the wife, were caused by her jealousy, although they do not state whether or not there was cause for such jealousy, because they saw nothing on the part of the husband which would convince the deponents that he had illicit relations with any other woman. Then came the testimony of the husband who related the annoyance which he had suffered because of the jealousy of his wife both here and in Mexico and Havana, until it came to the insulting terms set forth in the complaint, which have forced him to ask for a divorce, inasmuch as she has no grounds for jealousy which would justify her insults.

He acknowledged that after filing his complaint he had visited at night the house of his wife, leaving it at nine or ten o'clock, but without having had carnal connection with

her.   But then came the defendant wife and stated that all the quarrels during their married life had taken place after she had found her husband with a servant, and that on August 3, 1904, she had called him a man without shame because he had struck her with a chair on account of her having playfully thrown some biscuits on the counter; that she reported the matter to a policeman but did not wish to go to the hospital, that her husband after filing the complaint had remained with her many nights, living as husband and wife, and that he would arrive at the house at night at nine or ten o'clock, that he had deceived her by saying that he had withdrawn his complaint, and that even after the institution of the proceedings she had permitted him to come into her house because he always promised that he would withdraw the complaint.

And when the judge asked the wife on what she based her jealousy, she replied:

"Because one night I met him on Fortaleza street with a very pretty servant that I had, and another night I found him in the servant's bed in my house, and the impression that this caused me was such that the milk dried up in my breasts."

After the termination of the evidence which the judge of the District Court of San Juan summed up, he rendered the following opinion:

"All the evidence in this case having been heard, the court is disposed to render its decision right now.   The cause alleged in support of the petition for divorce is that contained in subdivision 4 of section 164 of the Civil Code, that is to say 'grave injuries.'   The evidence introduced shows that there have been serious quarrels between the spouses Fernández-Hernández.   In our opinion, the party bringing an action for divorce should be absolutely clean, and it has here been shown in a manner which leaves no doubt in the mind of the court that the origin of the quarrels between the spouses was the act so graphically narrated to us by the party defendant when she told us of having found her husband on a certain night in her own home in the bed of a servant, the impression she felt was such

that the milk dried up in her breasts. And it is from this moment that there arises, that there is born in the mind of the woman that tremendous jealously which caused the subsequent quarrels. Hence we do not find the party plaintiff in this case perfectly clean.

"Furthermore, in our opinion, an insult in order to be the cause of divorce, must be a real and true insult, uttered in a persistent and malicious spirit, and not during momentary excitement. A divorce is a serious matter; it dissolves a marriage, and its influence extends not only to the husband and wife, to the children, to the family, but to all society. Hence it is necessary to be both exacting and precise in weighing the evidence. It cannot be denied in this case that the wife uttered words which might be considered insults against the husband. But have the causes thereof been perfectly shown? Has a malicious spirit and a deliberate intention to really insult been shown? In our judgment they have not. Surely the persons who may have heard the words uttered by the defendant at the culminating scene referred to in the complaint, instead of forming a bad opinion of the wife, would have thought that it was a case of an excited and jealous woman. So that the insults may not have produced the effect of such insults. Therefore, while we realize that what is occurring between the couple Fernández-Hernández is indeed sad, we do not believe that recourse should be had to a divorce to solve the problem. Both spouses ought to control their own passions, the man being calm and the woman forgetting her resentment for the benefit of the marriage and her children, and they should not seek to dissolve the marriage entirely. Each ought to contribute his or her part of what may be necessary to restore peace. The court, weighing the evidence in the manner stated, believes that real insults have not been offered and that the complaint should be dismissed."

Then the following judgment was rendered:

"No. 167.—Serapio Francisco Fernández Suárez, plaintiff, v. Maria Dolores Demetria Hernández Cepero, defendant. Action for divorce. Judgment. This 9th day of November, 1904, in open court, this action was called for hearing in the regular order, and the parties appeared in person, with their counsel, and stated that they were ready. Counsel for the plaintiff presented his brief to the court and thereupon counsel for the defendant did likewise. Counsel for the plaintiff then offered his evidence, which was admitted. And finally, counsel for both parties made their oral arguments. And

the court, after having considered the briefs, the evidence and the
arguments, is of the opinion that the facts and the law are against
the plaintiff and consequently renders judgment denying the decree
for divorce applied for, with the costs against the plaintiff. Let this
judgment be enrolled in the judgment book of this court. Pronounced
in open court this 9th day of November, 1904. Enrolled this 10th
day of November, 1904. To which I certify. Luis Méndez Vaz, sec-
retary. Emilio del Toro, Judge.''

The husband, Serapio Fernández, took an appeal, and
both he and his wife, entered an appearance before this Su-
preme Court through their respective counsel, Díaz and
Texidor, and Eduardo Acuña, the former presenting his brief
in which he minutely analyzes the evidence introduced, which
he alleges to be favorable to the divorce, and he asserts that
the statement of the defendant wife cannot be given the
weight which the trial judge gives thereto, because it is un-
supported and is contradicted by the testimony of the wit-
nesses.

On the other hand, the *fiscal* and counsel for the respon-
dent maintain the justice of the judgment appealed from, and
at the hearing they set forth orally the reasons supporting
their contention.

The trial judge is right. A spouse who resorts to so im-
portant a remedy as that of divorce, sundering the marriage
bond and destroying a home born of mutual love, in which
there now are innocent children, should be free from all fault,
a real victim who had exhausted all friendly means to arrest
the evil at its inception.

But when this is not the case, one who sits in judgment
should meditate with a serene mind and weigh at their true
worth the causes for the rupture in question.

The statement of the defendant wife with reference to the
impression which the act of finding her husband with a ser-
vant made upon her is in every way ingenuous. This state-
ment does not stand alone, as is alleged, because all the wit-

nesses suppose that the jealousy of the wife was the cause of her indignation, although they say nothing as to the justification of such jealousy. It is clear that she, the offended wife, was not going to divulge the cause of her jealousy, which she revealed to the court only when questioned on the subject. This is a secret which a wife guards carefully because she would consider herself humiliated in making public that her husband had put her aside for another, especially when the other is her own servant, who is considered as being on a lower level socially. It is not strange, therefore, that neither her mother nor the witnesses who testified should be acquainted with the cause of that jealousy to which they refer.

Now then, in this state of mind, it is not human to suppose that the harsh words issuing from her lips at a certain moment can be qualified as partaking of a gravity incompatible with that state of mind. As it has not been shown that her brain is affected, it must be acknowledged that her action was prompted by the jealousy to which both she and the witnesses refer, and in these circumstances insults no matter how slight are due to an excited frame of mind.

The importance of divorce requires as a cause therefor, that the insults be public and notorious, as stated by Q. Micius Scévola, p. 421, vol. 2:

"A slight insult, in most cases, is the work of a moment of passion or anger. A grave insult is almost always an expression of hatred or ill-will, and the more grave and frequent the insult the greater and stronger the malevolence and the deeper the rancor."

And what hatred and rancor is there in this wife who receives her husband in her house after the bringing of this suit at nine or ten o'clock at night, as both acknowledge, although one of them states that they had carnal connection some nights, while the other denies it? It is true that these nocturnal visits accepted by her reveal that she does not nor ever did hold that hatred and rancor of which the learned

commentator speaks, and of him it cannot be said that he was attracted to the house of his wife, always at night, by a wish to enjoy the caresses of his children, who, in view of their tender age, must surely have been asleep at that hour.

The most simple and natural thing to suppose is that neither of the parties entertained for the other that rancor, that deep hatred which would have been engendered had she had the intention of insulting him gravely and which he would have felt upon being the victim of such grave and unjustified insults. For all the reasons stated, we agree with the opinion of the judge of the court of San Juan, and we recommend that the judgment rendered on November 9, 1904, be affirmed, with the costs against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández and Mac-Leary concurred.

Mr. Justice Wolf did not sit with the court at the hearing of this case.